Good morning all. Our first case this morning is Dilley v. Holiday Acres. Mr. Dribbs. May it please the court. Good morning. The District Court committed several different errors that I'd like to address this morning. The first one being whether Section 3B of the statute applied to create an exception to the immunity provided by Section 2. And Section B provides that a person no longer has immunity if he provides an equine to a person and fails to make a reasonable effort to determine the ability of the person to engage safely in an equine activity or to safely manage the particular equine provided based on the person's representations of his or her ability. And in this case, we know that the plaintiff said, I have zero experience as an adult on a horse. I may have ridden a horse when I was a small child, but that's it. More critically, during the course of this trail ride, the plaintiff complained that she could not reach the rope. I can't reach the rope. And Nicole Kremsrider, who was the trail ride leader, said, don't worry about that. The horse knows where he's going. So at that point, what I'm suggesting is that the evidence, and this is on summary judgment, but that evidence meets the exception set forth in 3B and also 3D for Willful and Wanton, which I'll get to in just a second. Nobody in this case has questioned an employment or agency relationship between Cryer and Kremsrider. I'll talk about the apparent agency issue in a little bit. But here, where the plaintiff actually says, I can't reach the rope, I'm not controlling the horse, and the defendant's agent says, don't worry about it. At that point, any previous assessment of the plaintiff's ability is no longer reasonable, or a jury could so find, because the plaintiff is saying, I'm not managing the horse. I can't reach the reins. Well, that suggests that the statute should be interpreted, or that this exception should be interpreted to cover the entire equine activity as opposed to the pre-equine activity inquiry. And that's an interpretive question on which the Wisconsin Court of Appeals has pointed in two different directions. Well, and I agree that there are two different directions. What I would suggest, Your Honor, is that in the Mettler case, the court said that the immunity turns on whether the defendant managed the horse on the day of the accident in light of the experience. Right, that's hard to square with the court's later opinion in Helen. Right, which they cited Mettler, but didn't try to distinguish it. And here's what I'm saying. Well, it's not a question of factually distinguishing it. It's an interpretive question. Sure, and they didn't say Mettler's wrong. They cited it with approval on the summary judgment part of it. Right, so we have two different Court of Appeals decisions, one interpreting the statute one way, your way, and one interpreting the statute a different way, the defendant's way. And we have to predict how the Wisconsin Supreme Court would break that dispute, or resolve that dispute, break the tie. So what do you think the state Supreme Court would do? All right, so I'll answer that question and then provide a case-specific answer. But the Wisconsin courts have consistently interpreted both Section 2 and Section 3, Section 2 granting Immunity and Section 3 being the exceptions, both of those broadly. And Helen and Mettler both view those broadly. And Helen, the court said, look, putting a blanket on the horse is part of the equine activity. And it viewed that extremely broadly. So, and I'm going to get case-specific now, I don't think it matters in the Dilley case. And the reason it doesn't matter is because when she says, I'm not managing the horse, I can't reach the rope, then what I say is the defendant under the statute has to do a reassessment. Why? What part of the statute requires that? The language that says reasonable effort, because... Reasonable effort to determine the ability of the person to engage in this activity and to safely manage the horse. So once you find, you may have made an assessment... Before the equine activity starts. Well, it doesn't say that. It says to safely manage the particular equine provided. But that doesn't impose on the provider of the equine a duty to safely manage. It's a pre-activity inquiry that the provider has to engage in in order to claim the immunity later. I would respectfully disagree that the statute only applies prior to beginning the ride. Because that would, I think, defeat the purpose of the immunity. Because if the trail ride leader finds out after the ride starts that this is totally a mismatch, the plaintiff shouldn't be on a horse at all, and then continues to allow it. Then any assessment that the equine provided was reasonably matched no longer is reasonable. And the statute requires it to be reasonable. Now, the other part, though, that same evidence fits subparagraph D, which is not limited in time at all. Subparagraph D says no immunity if there's willful and wanton misconduct. And the defendant's response to that is, look, it doesn't mean conscious disregard. It's got to be intentional. But the district court in the Scher case says no, intentional misconduct is not required under willful and wanton in Wisconsin. But it's also supported by an examination of the statutory text, which has a separate provision under 3E for intentional misconduct. So if willful and wanton means intentional, then 3E is superfluous. There's no reason to put it in there. So the way the statute is drafted, willful and wanton means what we familiarly think of it as, conscious disregard of a known danger. And when Dilley says to Kremsreiter, I can't reach the rope, and she says, don't worry about it. The horse knows where he's going. That's conscious disregard of a known danger. And the record supports that the plaintiff has met section 895.481.3D for willful and wanton. So I would submit, Your Honor, that either way you read the statute, there's nothing in it that says they can ignore later acquired knowledge. The statute could have been drafted to include that. But the use of the term reasonable suggests that it must be evaluated in the context of the entire knowledge that the defendant has, and that they aren't permitting the defendant to simply ignore after acquired information. Does the record reflect, Mr. Dribbs, how far into this ride the issue of being unable to reach the rope occurred? It does not. It does appear that it was some five minutes to 10 minutes. And I'm just kind of inferring that from a couple of things. The trail rider thought that the ride was about 30 minutes. The plaintiff thought it was about 15. And the exchange occurs at least long enough for the trail ride leader to respond. We know that much. The plaintiff was not asked in her deposition how much later was it. Well, I'm just trying to determine was this a risk existent at the moment of getting on the horse. She said that she had trouble off and on, that this was something that repeated. That she had gotten the reins, or what she called the rope, couldn't hold on to them, got them again, couldn't hold on. And each time she did that, she started to slide off and had to grab the pobble. So this appears to have been an ongoing problem for her. Right. And she, whatever time it occurs, she announces this once to the trail leader? And is told to not worry about it. Mr. Gips, it seems to me that if you can overcome the various immunity defenses and other issues with respect to your claim against Mr. Cryer and the stables, there remains a very significant issue concerning your attempt to hold Holiday Acre properties liable here. Could you just address what you think Holiday Acres did, what the resort did, so as to create some sort of apparent agency here? Absolutely, and I appreciate the opportunity to address that. In this case, the plaintiff argued that the defendant held out to the general public and was carrying on with Holiday Trails as though they were one business, and that's in the record at document 59, page 77. Could you be more specific about the evidence, not just the label? Sure. All right. And I would also direct the court to the defendant's brief at page 32, where they concede these things. And, Judge Hamilton, the specific evidence is that Holiday Acres' concession, which is at page 32, they agree that Holiday Acres provided flyers, advertising, and a website in which the trail rides were advertised and were not clearly delineated as a separate business. And in the 30B-6 representative's deposition from Holiday Acres, and this is document 58-3, and I'm looking at pages 17 to 18, he talks about an ad for the trail ride saying, Get up with the birds and enjoy a ride in the woods. Stop on the trail for a hearty, traditional cowboy breakfast in the open air, including scrambled eggs, pan-fried spuds, sausage links. This wasn't a breakfast ride, however, was it? Yes. That was at breakfast. Plaintiff was heard on a breakfast ride? That was my understanding is that that was going to be the conclusion. Your understanding? This is your case. Can you help me out? This sounds like it might make a difference. What she says is, and here's what I'm looking at for what she relied on, Before you fell, did you have any personal knowledge whatsoever that Holiday Acres had anything to do with the Stavis? And her answer is, because I saw photos of Steve Cryer as Cowboy Streeve dressed up, serving pancakes at the resort for the Thursday morning ride. They also advertised wagon rides, and because of that, she believed that they were tied together, that they were one entity. And I think that that's exactly the same thing that the defendant has conceded they were aware of, and acquiesced in, and published to get customers. Mr. Dribbs, do you want to address, if you would, what you find to be error in the district court's finding that this is weight, this argument? Sure. We did not use the phrase apparent agency. I will say that we did argue that the defendant held out Holiday Trails, and that they were holding out to the general public and carrying on as though they were one business. And we argued these same facts. The advertisements showing that they had both the Holiday Acres employee, Kim Zabron, and Steve Cryer together in the same photo, conducting the activity with no effort to distinguish them as separate business entities. And so we argued that in our response, which was document 59, and it was pages 7, 8, 9, and 10. And that's where it was argued in the district court. Yeah. Well, the district court suggested you cited no legal authority and didn't advance any legal theory in finding that the argument was waived, that is. Well, to the extent that the district court thought that it was waived, the district court went ahead and analyzed it and didn't rely on any waiver, but went ahead and said, look, I don't think this evidence is sufficient. So I would suggest that if there was some technical waiver, it certainly was harmless, and that the district judge had more than enough to make a decision. He just didn't take into consideration the evidence that we produced. And the defendant concedes that in their brief at page 32. How do they concede that? How do they concede that? They said that that was the waiver. Excuse me. They said that that was the apparent agency. They said there were limited representations made by or approved by Holiday Acres Properties that could justify belief that Holiday Acres Properties and Cryer's Business were the same entity. That's the heading. And then they go ahead and explain why that impression could result. I'd like to take just one moment to. I'm not. I thought you said that they conceded the waiver was harmless. No, I'm sorry. They conceded that there was a waiver. If I misspoken, I apologize. The district judge found that you had waived the issue. Correct. I'm saying that I think that there was not a waiver because the district judge had enough information to make a decision on the merits, which is what he did. He just got that wrong. And so there's no actual waiver. When he has the information, we put the factual predicate into the record, and he made a ruling on the merits. Do you want to save some time for rebuttal? I would, Your Honor. Thank you very much. Ms. Bordy. Good morning. May it please the Court, my name is Danielle Bordy, and I represent the appellee, Holiday Acres Properties. First, to the question that was just posed regarding the waiver issue, I'd just like to direct the Court's attention a few pages prior to that, and also to docket 103 at page 12, where the district court did expressly hold that the plaintiffs had in fact waived their argument regarding apparent authority. Explicitly, the Court states, as Your Honor had pointed out, that Dilley cited no legal authority. She did not explain how these facts, which counsel had cited, how these facts show that the two entities are actually one, or even that they should be treated as one. And the Court then expressly states, because her argument is so undeveloped, it is waived. The fact that the Court then went on to address the argument as dicta to then show, even if it wasn't waived, why it couldn't hold any water is irrelevant to the fact that the issue was itself waived. And importantly, for purposes of this appeal, the plaintiff has not addressed how the district court's waiver was improper. Now, with regard to the appellee's argument regarding apparent agency, we first maintain that the argument is waived. We maintain then that the appellant failed to address why the waiver was improper. But then, considering that the appellant's entire argument or the bulk of the argument against my client was based on apparent agency, we decided to go ahead and address it before the Court's consideration, if the Court were to address the waiver issue first. But I believe because the appellant has not necessarily established that the waiver by the district court was improper, there's no need for this Court to consider the merits of the apparent agency argument. What the appellant also doesn't point to is the fact that, although the appellee did concede that there could possibly be some representations that could hold some weight for apparent authority or, excuse me, apparent agency, the remainder of the argument, they can't meet the remaining elements, which is reliance and then a causal nexus between the agency and the tort. But I'd like to back up a little bit and just point out that the district court did appropriately dismiss this case against the defendants by granting the summary judgment and holding the equine immunity statute barred plaintiff's claims. And I think one thing that hasn't been brought up yet is the broad scope and its applicability to the appellee in this case. Before you dig into the statutory text, could you address Judge Flom's factual question in mind? How far into the ride did this happen, and was this a breakfast ride? I don't recall whether or not there's any evidence that it was a breakfast ride, and I do recall that it was shortly into the ride. I don't have that record site in front of me, but I would be happy to provide that after the argument. One of the arguments that was advanced but not necessarily addressed on the oral argument is whether or not the statute immunizes the defendant's negligence. And that's kind of one of the underlying premises that the district court noted was a misunderstanding of the Wisconsin law. And as the bench has already pointed out, there are some established Wisconsin cases on the topic to which the bench can look to for guidance in deciding this case. Could I go back just to the waiver question for a moment? Absolutely. If we thought the waiver decision by the district judge was inappropriate, I want to ask you about the position of the plaintiff where she said she, according to her testimony, that she saw the holiday stables on the Holiday Acres website, and it was her understanding that the resort and the stables were, quote, tied together, unquote. Is that what the record shows, that the Holiday Acres website shows the availability of the stables? Absolutely. There were subsections on the main website for the entire resort that did advertise a variety of different activities that were available. One such link brought the user to a subpage which showed that trail rides were available. So if waiver were not an issue, you wouldn't think that would be a sufficient thing to go to the jury, the question of the apparent agency? No, I don't think so, because the plaintiff hasn't argued or presented any evidence that the remaining elements of apparent agency are met, specifically one being the reliability is a big issue. The plaintiff, it's undisputed that she had called Holiday Stables to make the reservation. She didn't go through the resort. She spoke with Steve Cryer, who identified himself as the proprietor, and there's also her testimony that she knew that the Holiday Acres resort was owned by somebody else. So she knew that my client, the proprietor, was somebody different than Steve Cryer. So she had that knowledge. She also went the morning of and made a personal check out to Steve Cryer for the ride. She signed a waiver that only included Steve Cryer and the person that he rents the horses from. And so there's no reasonableness to her belief that after all of this information that she learns, that they could be one in the same. And further, the representation on the website, I don't think in and of itself could be sufficient to convey that meaning, that they are one in the same, as the plaintiff said. The fact that the resort listed different activities and said, you can go horseback riding, you can go to breakfast rides, you can do this. I don't think that that conveys in and of itself that they're the same. How about the similarity of the names? Well, that's not something that our client can really be held accountable for, the fact that somebody else decided that they wanted to adopt the name as a DBA. It's not an incorporated business. We didn't have any say in what he was calling his business. I suppose in hindsight now that this case has gone up and this argument has been attempted to be made that, sure, something could have been said that maybe you need to change your name, but that's not something that my clients can really be held accountable for. In addition. That's what a parent authority is all about. It's about what the appearances to the outside world are. Sure, absolutely. So whether there was some sort of awareness on the part of your client that there might be this subjective awareness, and that seems to be what you're arguing, that they can't be held liable because it's not their fault that Cryer or Krier, I'm not sure how it's pronounced, used the same name as their resort. Well, I think if you want to examine whether or not the name in and of itself can bind them, again, I think that goes to you need to look at the rest of the elements, which is it was a separate entity name. It was Holiday Acres Stables. Yes, there was a similarity, but the plaintiff did testify that she looked at some Facebook pages that were maintained by Cryer, and the name of the Facebook page was Holiday Acres Stables at Holiday Acres Properties. So I think, yes, there is a similarity in the name, but even the Facebook name distinguishes that it's a separate entity that might be present at the resort. And, again, then examining what the plaintiff herself admitted that she learned and understood prior to going on this trail ride, I think further shows the unreasonableness of her now assertion that she wants to hold Holiday Acres Properties liable because she thinks that they were one and the same. Because there are the four elements that are needed, the acts by the agent or principal that justify a belief, the knowledge of such acts by the party sought to be held, which we had just discussed, reliance on the apparent agency, and then the key part that's often overlooked that Wisconsin law makes a point of is the causal nexus between the plaintiff's reliance on the agency relationship and the tort. And in this case, there's been no allegation that there's any kind of nexus. And, in fact, there's really not been a whole development of this entire argument because it was waived by the district court. So we're just kind of shooting blindly here, trying to poke holes in the plaintiff's argument that they haven't really even made. So I think the district court was correct in determining this whole issue was waived and the fact that the plaintiff had asserted various facts and representations regarding marketing materials is immaterial to the fact that they couldn't connect the dots between the marketing materials and find that apparent agency. I want to go back, though, to the kind of broad statutory scheme regarding plaintiff's argument from the brief that negligence is not immunized by the statute. I think this case calls for a clear application of Wisconsin law, and there's been no question in Wisconsin law that the Equine Immunity Statute applies to negligence cases. In fact, the published cases in Wisconsin, albeit limited in nature, by and large are all negligence cases. The Kangas case, which the appellees cited in their brief, dealt with claims of negligence when a party fell off of a sled when a horse kind of started unexpectedly. And the Helen case, another allegation of negligence that a horse was mishandled and then stepped on somebody. So I think one thing that really hasn't been articulated by the Wisconsin courts, because it seems to almost go without saying, is that they don't focus necessarily on the legal theories that are pled by the plaintiff, but they look at the facts underlying the mechanism of injury. And in this case, the facts underlying the mechanism of injury are that the plaintiff was on a trail ride, it's undisputed that her horse got spooked by one thing or another, and she was bucked off. As such, it should be undisputed that the cause of her injury was an inherent risk of an equine activity. So could you focus on the exception concerning providing a horse to a person and failing to make a reasonable effort to determine her ability to engage safely in the activity? Absolutely. I think the district court was correct when it determined that the plaintiffs had not provided any evidence that Steve Cryer did not make that assessment. The undisputed evidence in the record show that the plaintiff did inform him that she hadn't ridden as an adult. And from that, he made the assessment to give the plaintiff his most docile horse that he usually saves for children. Or her ability to safely manage the particular horse involved. Does that involve any duty to tell a complete novice what the reins are for, where to put her feet, how to hang on, et cetera? Wisconsin cases have not interpreted any form of or any requirement of instruction into the statute. Why isn't that a perfectly reasonable interpretation of that duty, where there's a duty to use reasonable care at least in that particular stage of the process? Well, I believe that because of the initial assessment that the plaintiff was able to ride this horse and evidence in the record shows that the horse essentially just guided along and on all the other rides just followed the other horses, that there was no need for this further instruction because the plaintiff wouldn't have needed to know how to do anything more than sit on the horse. Why isn't that a jury issue here? I don't believe that's a jury issue. Because anybody's going to need to know at least a little bit about a horse, right? In this case, the owner of the horse said, no, this was a kid's horse. Anybody can just sit on and go. That's what the owner says, I understand. It's summary judgment, though. That's my problem here. All right. And I appreciate that, but I think the plaintiffs haven't proven that there's any form of instruction that's needed. I understand that... They don't have to prove it. They have to offer some evidence. But I don't think there's any case law that supports that. Does case law reject it? I'm sorry? Does case law reject the idea? It does not. It's silent on it. Okay. But I think that had the plaintiff been provided with a horse that required some more control, then perhaps that would have been reasonable. But when you're assessing the entire picture... Doesn't any horse require some? Isn't that what this whole episode tells us? That even Blue, the horse that they provide to the children, could be spooked and could throw a rider? I suppose that... That's the case. And I guess it could necessarily be an issue. In this case, I really don't think, though, that it requires a jury assessment. I think the court is able to look at what's reasonable in light of the circumstances. Doesn't the grant of immunity cover negligent instruction? It does. It broadly immunizes all parties for their negligence. And going back also... Except with respect to providing the horse and ensuring whether the... determining the ability of the person to engage safely in the activity on that and to manage that horse, right? That's the exception. I get the idea that this is special interest legislation to protect an industry that was in trouble, but it's also riddled with exceptions. It is. But I think to the point before regarding when that assessment is made, at the time that the ride started, there was an assessment that was made that the plaintiff would be able to safely manage based on her representation of limited skill and matching with the horse. I don't think they have a continued duty to reevaluate when the plaintiff says sometime later in the ride that she's having issues. That, I think, would be an unreasonable requirement because... If she's falling off the horse and the leader does nothing, could that be treated as willful and wanton? It depends on the notice. Did the rider or did the person who was leading the trail ride have noticed that she was falling off? We have... Okay, here we have not quite that much, but we have her saying, I can't hold onto the rope, I can't reach it. Sure. Is there a duty to do anything at that point? I think there is a duty, but that duty to take action and perhaps the failure to do so could be negligence, which is then immunized. And I don't think it necessarily falls under the willful and wanton because under Wisconsin law, while it's not intentional actions, it is an... Counsel, it's not a question of what necessarily is proven here, that you won on summary judgment, okay? The question is whether a reasonable jury could find this was willful or wanton under the circumstances. So if you'd focus your argument on that question, it would be more helpful. I don't believe that under Wisconsin law, a reasonable jury could find that it was willful and wanton because there was no intent by the actor. Is your position that the suggestion that the horse will just continue on its way safely, even if it's an insufficient instruction, is enough of a reasonable response to the plaintiff's claim of I can't reach the horse? I'm sorry, could you repeat that? Yeah. I'm trying to understand is the position you're taking, especially with regard to Judge Hamilton's inquiry, that if we have the facts as we understand them today, when the response comes from the leader, the trail leader, not to worry because in this situation, the horse will take care of your inability to stay with the reins. Is it your suggestion that it avoids summary judgment simply because that was a reasonable response to the request? So there was no, it may be inadequate, but under the reasonable standard, you're saying that's reasonable conduct? I don't think perhaps it was the most prudent, but I don't think it falls into the line of unreasonable, given the horse. That's where the immunity comes in, even if you're saying immunity covers that kind of a situation. Correct. It could in fact be deemed a negligent response to the plaintiff's inquiry, but given that it was this horse that was supposed to just go down the trail, the appropriate response could have been, all right, I'll stop and take a look. But the response reasonably by the person who was running the trail, who knew that the horse just walked along and stood in line, was it's fine, you don't need to even hold the reins. Again, because this was a child's horse, they can typically just plop somebody on there and let it go. So I understand that it could be deemed negligent, and perhaps the trail rider could have addressed the plaintiff's complaint, but that act of negligence then would fall under the immunity for the Aquine Immunity Statute. I would also just like to point out, though, while I have a little bit of time left, that I don't think there's really been any dispute, or I should say, if the court determines that it needs to simply apply Wisconsin law and hold that negligent acts are immunized under the statute, so long as they don't fall within any of the exceptions, I don't really think there's been any argument other than the apparent agency argument that my client, the appellee's Holiday Acres properties, have fallen within any of the exceptions in the event that their negligence is immunized under the statute. Just very briefly, I would also like to address the evidentiary issues in the case. I don't think there's been sufficient argument or evidence presented that the district court abused its discretion in determining to strike both the plaintiff's retained experts and 10 treating medical providing experts. With regard to the retained expert, the district court carefully analyzed the requirements for admissibility. It determined that the plaintiff's expert had not used any methodology, and even to the extent that the plaintiff argues that the expert was using her industry experience as a methodology, there was still no explanation as to, this is the industry standard, this is how I know it's the standard, and this is how it doesn't meet the standard. Instead, the report simply said, I didn't like what I didn't see, here's my opinion, and there was no analysis to it whatsoever. And then turning to the treating providers, the blanket summary that the plaintiff provided is woefully inadequate under the statute. I think even just a plain reading of the rule will lead any reasonable person to determine that a blanket summary that says that treating providers will provide opinions regarding treatment, causation, injuries, is inadequate for the appellees to be able to determine what these treating providers are going to be providing their opinions about. Would there be any reason they could not testify about the facts of the injuries they observed, the treatment they provided, and the condition of the plaintiff when she came into the hospital? I think the rule still requires that they provide a summary of the facts. They're not allowed to just be fact witnesses? I suppose they could be fact witnesses. Yes. Yes, they could come in and say this is what happened, but with regard to the fact that they were disclosed as non-retained experts, there was no discussion about what their treatment was, what the facts they relied upon, or what their opinions would be. Thank you. Thank you. I'd like to pick up with the ending of that. In this case, the disclosure was a little bit out of the norm because we specifically referenced depositions of the doctors. We had entered into an agreement with defense counsel that they could take discovery depositions of the doctors in order to learn their opinions. The main treating doctor was actually taken in January before our disclosure was due, and in that deposition, which is ECF 109, the defense asked him, what was the cause of the pain? Most likely the fall was the cause of the pain. I felt the compression fractures were injury-related. The rib fractures were injury-related. So we referenced the deposition that was already taken in the case. The court then approved the stipulation that the parties reached and included that we were going to take depositions of the doctors, and that was the whole purpose of saying, look, you're deposing these doctors. We're agreeing to let you do discovery depositions, even though it's a federal case. Did the doctors agree to each be deposed twice? All I can say, Your Honor, is they did not object. They did not raise the one deposition per witness rule. But clearly the defendant was okay with that because they, in their disclosure, ECF 94 said they adopt plaintiff's disclosure and the doctor's deposition testimony. So they clearly were okay with what they had found out on deposition, and it's disingenuous to say that they had to guess at what the doctors would say. With regard to whether there is evidence, the defendant's expert, Bean, said that assessing the person's ability to engage safely in equine activity always,  requires the trail ride leader to determine if the rider knows how to steer the horse, stop the horse, or make the horse go. And that's document 113 at page 133. There's no evidence that plaintiff knew how to do any of those things, and there is evidence that she didn't know how to do it. She said that she did not understand the basic mechanics of a horseback ride, and that's in her deposition at page 29. And she told them that she had no experience or knowledge about horseback riding. So I would submit that there is, in fact, evidence that the defendant had knowledge. She didn't know the most basic things, and when the plaintiff told the trail ride leader that she couldn't even reach the reins, that's willful and wanton, and willful and wanton depends on knowledge. So I would submit that that is a continuing standard. When the defendant learns something, there's a duty under the statutory exception to take action. All right, thank you. All right, thanks to all counsel. The case is taken under advisement.